## EX PARTE GEORGE BATES.

### No. 6737.   Decided December 14, 1921.

**Habeas Corpus—Bail—Rule Stated.**

In an appeal denying bail in a capital case, the proof must not only show that the accused is guilty, but that the jury would, if they enforced the law, assess capital punishment, under a well-guarded and dispassionate judgment, etc., and also show conclusively that deceased came to his death at the hands of the accused, and bail must be granted in the instant case, which is now here done, in the sum of $5,000.  Following Ex Parte Smith, 23 Texas Crim. App., 125, and other cases.

Appeal from the District Court of Nacogdoches.  Tried below before the Honorable L. D. Guinn.

Appeal from a *habeas corpus* proceeding denying bail in a capital case.

The opinion states the case.

*V. E. Middlebrook* and *S. M. Adams,* for appelant.—Cited cases in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—On Sunday night, November 20, 1921, appellant and his wife lived in a small box house in Nacogdoches County.  About eight or eight-thirty o'clock a fire was discovered by some neighbors who had to go about a mile from their place to the scene of the fire; and when they reached the house it was about consumed and portions of it had already fallen in.  When within one hundred and fifty or two hundred yards of the place they discovered appellant in the yard, first having heard him hollering or making some noise.  Upon approaching the place closer they found him entirely nude, but having an undershirt in his hand.  He seemed to be walking about the yard at that time.  Upon remark being made to him by one of the neighbors about the house burning he said his wife was burning also.  He told these witnesses that when he waked up portions of the house were falling upon him, and he called his wife and they started out of the house together, but some portion of the house fell on him and separated them, and that she did not get out of the house.  Appellant was found to have been burned across the back of the neck and across each ear and his hair singed nearly to the crown, and also a large blister on one hip.  After providing him with some clothes suggestion was made that they had better start his car and take him to some neighbor's house, whereupon appellant told them his car was locked and the key in his pants pocket, which had burned up in the house.  After the house was nearly burned the body of appellant's wife was discovered and water thrown on that

portion of the fire and extinguished sufficiently to permit them to get some boards under the mattresses on which the body was lying and pull them out of the fire. Her legs were burned off above the knees and her arms above her elbows; one side of the skull was burned and exposed the brain, and also the front part of the body, exposing the entrails, lungs and heart. On Sunday afternoon before the fire appellant had borrowed a shotgun from a neighbor for the purpose, as explained by him, of killing some cats. One neighbor testified to having heard two gun shots on the night of the fire, and prior to its discovery. Metal portions of the gun were discovered after the fire, and the sheriff testified that the brass ends of the cartridges showed from the plunger marks to have been fired. Evidence was also introduced of some tracks of someone in his sock feet going to a fence where they had crossed the fence and returned, having recrossed the fence at another place. No connection seems to have been shown, so far as we can judge from the record, between appellant and these foot prints. Evidence was also introduced to the effect that appellant and his wife did not get along well, he apparently being jealous of her, and that some acts of violence towards her had occurred a short time before the fire. Deceased's body seems to have been taken from the house at about the place where the bed was sitting, and was apparently on two or three mattresses; the portion of the mattresses under the body not being burned. Deceased's body was removed on the night of the fire. On Monday or Tuesday after this some parties in examining the bed found between two mattresses, and under the spot where deceased's body was lying, a pair of pants, which they said were blood stained, in one pocket of which was found an automobile key, presumably belonging to appellant. At the instance of the State doctors were requested to examine the body to ascertain, if possible, whether any violence had been inflicted upon it. The testimony of the physicians is to the effect that the portion of the skull which was gone appeared to have been burned away and a portion of the brain destroyed by fire. The portion of the brain remaining was examined critically by them for the purpose of ascertaining if any foreign substance such as shot could be found, but without success. They found no evidence of fracture of the skull in any way. A portion of one lung was burned away, but the remaining portion of that lung and the other one seemed to be intact and showed no evidence of violence. The heart was in the same condition, and no evidence of external violence was found in the intestines remaining. No blood was found in the cavity. We make no comment upon the testimony. We do not believe, under the well established rules relative to bail, that the proof meets the requirements of the law which would warrant us in upholding the order of the trial judge in denying bail in this case.

"All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident." Article 1, Section 11, State

Constitution. In Ex Parte Boyett, 19 Texas Crim. App., 45, the word "evident" has been defined as "plain, clear, obvious." Mr. Branch substantially states the rule that all prisoners shall be bailable except when the proof is evident that not only accused is guilty, but that the jury will, if they enforce the law, assess capital punishment, this conclusion to be reached by the well guarded and dispassionate judgment of the court or judge passing upon the question. It may be added that it must also be evident that deceased came to her death at the hands of accused. In other words, it must be evident that an offense has been committed. See Ex Parte Smith, 23 Texas Crim. App., 125; Ex Parte Russell, 71 Tex. Crim. Rep., 377; Ex Parte Hill, 83 Texas Crim. Rep., 146, 210 S. W. Rep., 996. Tested by the rules above referred to, we do not believe the trial court was authorized to hold appellant without bail.

The judgment refusing bail will, therefore, be reversed, and appellant granted bail in the sum of five thousand dollars, upon the execution of which with sufficient sureties, he shall be discharged pending the trial of this case on its merits.

*Bail granted.*